28        APPELLATE COURTS OF ILLINOIS.

Osborn v. Corn Exchange Nat. Bank of Chicago, 218 Ill. App. 28.

## Frank Osborn et al., Appellants, v. Corn Exchange National Bank of Chicago, Appellee.

### Gen. No. 25,406.

BANKS AND BANKING, § 146*—*when bank is not liable for forged checks or indorsements.* The conduct of plaintiffs in exercising no supervision over their employee to whom they have intrusted the handling of their banking matters, not examining the bank accounts, statements, checks or vouchers returned to them monthly by defendant bank, but leaving these matters to the employee, in signing, without question, checks presented to them by the employee for signature, *held* to prevent recovery by them against the bank for money paid out by the bank on checks signed by plaintiffs, but indorsements on which were forged by the employee, it appearing that by any attention on their part to their bank balances and returned checks plaintiffs could have learned of such forgeries, and that they made no examination of defendant's monthly statements, the latter being accompanied by a request that examination be made and differences reported and stating that the account would be considered correct if no error should be reported in 10 days, and it also appearing that plaintiffs knew such employee was living in a manner not warranted by his salary.

Appeal from the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed April 12, 1920.

NINIAN H. WELCH and WILLIAM J. LACEY, for appellants.

GARDNER, FOOTE, BURNS & MORROW, for appellee; WILLIAM A. MORROW and WALTER M. FOWLER, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is an appeal from a judgment of *nil capiat* entered upon the verdict of a jury.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Plaintiffs had in their employ a rascal named John W. DeLisle, who forged indorsements to many checks during a series of years, amounting, as plaintiffs claim to $19,212.25, which defendant paid out of plaintiffs' funds to their credit in its bank, and which amount plaintiffs seek in this suit to recover from defendant.

Plaintiffs were insurance brokers in Chicago for about 19 years, writing marine insurance principally. They were general agents for the Union Marine Insurance Company of Liverpool, the Firemen's Fund Insurance Company of San Francisco, the Columbia Insurance Company of Jersey City, the Mannheim Insurance Company of Mannheim, Germany, the Phoenix Insurance Company and the Nord-Deutsche Insurance Company, and were officers and stockholders in the Federal Union Insurance Company, an Illinois corporation, whose business was transacted in plaintiffs' office. Plaintiffs' books and those of the latter company were kept separately and the business transactions of the other companies and of plaintiffs were carried on the latters' books, but the bank accounts of each were separately kept. Plaintiffs did all their banking business with defendant, as did the Federal Insurance Company, and plaintiffs as agents for the other companies kept separate accounts in defendant's bank.

DeLisle was in the employ of plaintiffs from the fall of 1908 continuously until January, 1915. He did clerical work at first, being gradually advanced to head bookkeeper, as such bookkeeper keeping the books of the Federal Union Insurance Company as well as those of plaintiffs. It was among other things his duty to deposit checks to the different accounts for which such checks were intended. Checks coming by mail were delivered at the office and DeLisle placed rubber stamps on the reverse of such checks, making them payable to defendant bank under the

proper name. DeLisle also, when he was working, made all of plaintiffs' bank deposits. He had no authority to indorse the name of the Federal Union Insurance Company on its checks other than by rubber stamp. He checked up all monthly statements received from the bank showing balances of plaintiffs and the Federal Union Insurance Company, drew checks of plaintiffs and the Federal Union Insurance Company, which he procured to be signed by different officers, drew all checks which were payable to all the different companies represented by plaintiffs as general agents, and also other checks of plaintiffs payable to other parties. In presenting checks to be signed he would sometimes present a bill or invoice showing what the payments were for; at other times he presented nothing but the checks for signature.

The deposits of plaintiffs in the defendant bank amounted to hundreds of thousands of dollars each year. It seems that all the checks drawn by plaintiffs and the Federal Union Insurance Company on the defendant and paid by it were, when returned to plaintiffs and the insurance company with monthly statements showing checks received and paid and balance due plaintiffs and the insurance company, examined only by DeLisle. The following are examples of the system by which DeLisle perpetrated his forgeries. On July 18, 1911, DeLisle drew a check for $49 on plaintiffs' check book, payable to Federal Union Insurance Company, had the same properly signed and then forged the indorsement of the insurance company by writing its name thereon and signing the name "T. L. Osborn," received the money and converted the same to his own use. July 22, 1911, he drew a check for $195.50 in exactly the same manner, forging the name of the payee and procuring payment of the check, converting the same to his own use. In a similar manner about 200 checks were drawn by DeLisle from the funds of plaintiffs

in favor of the Federal Union Insurance Company, totalling $19,212.25, upon which DeLisle forged the indorsement of the insurance company, secured payment of the checks and converted the whole thereof to his own use. At the time these checks were drawn there was nothing due from plaintiffs to the Federal Union Insurance Company. They were all drawn by DeLisle and were all properly signed. Everything was regular except the indorsements, which were forged. DeLisle took the precaution of burning all but six of these numerous checks of forged indorsements, after which they were returned to plaintiffs by the defendant bank. DeLisle caused some of the checks to be cashed by third parties. He had an account with the Edgewater State Bank and its predecessor, in which he deposited many of the checks on which he had forged the names of the payees. None of the plaintiffs ever saw any of the forged checks after they were paid by the bank. DeLisle had no authority to indorse the name of the Federal Union Insurance Company by T. L. Osborn, Treasurer. After plaintiffs discovered these forgeries they realized about $1,800 from certain personal property which DeLisle owned, which is the sum total of plaintiffs' reimbursement for DeLisle's forgeries.

There is no dispute that the aforesaid indorsements were forged and that the bank paid the money out on such forged indorsements. It also appears that the defendant bank furnished plaintiffs a monthly statement of their account with the bank, together with all checks paid during the month, all deposits made and the balance due plaintiffs at the end of each month. There were no entries made in plaintiffs' books by DeLisle to correspond with the forged checks; he forced balances by inaccurate footings. January 27, 1915, after plaintiffs discovered the forgeries, they demanded of the defendant bank payment of the total amount of the forged checks cashed

by it, amounting to $19,212.25. Plaintiffs discovered the forgeries about Christmas, 1914, and on January 8, 1915, after such discovery, one of the checks was paid by the defendant through the clearing house. The only notice received by defendant regarding this particular check was the demand made January 27 for the payment of the total amount of the forgeries.

Plaintiffs' theory of their right to recover rests in their contention that the relation between them and the bank was that of debtor and creditor; that the bank could only discharge its obligation to plaintiffs by repayment to them or upon their order of deposits made by plaintiffs; that this relation made it the duty of the bank to determine the genuineness of the indorsements on all checks and that any payment without such determination by it was made at its peril; that plaintiffs might rely upon the examination made by the bank; that the law did not require plaintiffs to examine the monthly statements and returned vouchers for the purpose of detecting forged indorsements, but that that duty rested upon the defendant bank.

On the other hand, defendant places its defense on the contentions that the law required plaintiffs to exercise ordinary care in the conduct of their business and in the handling of their bank account, and that such ordinary care required them to make some examination of their monthly statements, checks and returned vouchers, not for any specific purpose, but to determine whether the account was correctly kept, and to report to the bank any error which such examination might disclose; and that if plaintiffs had made any examination whatever of their books with the monthly statements and vouchers the forgeries would have been immediately discovered, and that their failure in this regard was negligence which made a continuance of such forgeries possible. It further contends that plaintiffs' failure to give im-

mediate notice of the forgeries after discovering them was such a breach of their duty as to bar recovery; that the fact that plaintiffs took DeLisle's property and exacted from him a promise to make good the shortage, deprived the bank of any chance of redress against DeLisle; that in so doing they elected their remedy against DeLisle, ratified his forgeries, and waived all right of action against the bank.

At the foot of the monthly statements rendered by defendant to plaintiffs was the following notice: "Please report any difference in this statement to the auditor. * * * Please examine at once. If no error is reported within 10 days the account will be considered correct." DeLisle's forgeries extended from 1911 to 1915. During this time his salary was $120 a month. To the knowledge of plaintiffs, DeLisle owned during that time three automobiles, the first one costing $600, the second $1,100 and the third $1,600. Two of the Osborns were on a footing of social friendship with DeLisle, at times visiting at his residence, and they also knew that he owned an automobile which he drove daily, T. L. Osborn at times riding with DeLisle in his car. DeLisle was a man of family, having a wife and three children. Unlike the average culprit of this character, he did not gamble or speculate, but his ill-gotten gains were dissipated in high living. Clair Osborn for a time lived in DeLisle's family, as DeLisle testified to help out with the family expenses, and must have known that on the meager salary DeLisle was receiving he could not support his family in a lavish manner and indulge in the luxury of an automobile. That DeLisle had anything more than his salary with which to pay his expenses is, to say the least, rather doubtful, although there is some reference to a "lump sum" received from a relative, but no suggestion regarding the amount.

It is evident that plaintiffs had the utmost confi-

34 APPELLATE COURTS OF ILLINOIS.

Osborn v. Corn Exchange Nat. Bank of Chicago, 218 Ill. App. 28.

dence in the integrity of their bookkeeper DeLisle; they trusted him implicitly, and kept no oversight of any kind over him or his accounts. They never during the period covered by his peculations examined the bank account, statements, checks or vouchers returned by defendant monthly to them. They left all these matters in DeLisle's hands. The forged checks he regularly destroyed without plaintiffs' knowledge by burning them each month they were returned. They signed such checks as DeLisle presented to them without question, and all checks, indorsements on which DeLisle forged, were presented by him to one of the plaintiffs and unhesitatingly and without question signed. At no time when these checks were signed was there any money due from plaintiffs to the Federal Union Insurance Company, and this plaintiffs knew, or in the exercise of any sort of diligence could have known. That plaintiffs were negligent in all these matters there is no room for discussion or divergence of opinion; they were flagrantly so.

The question for our solution is: Will the law saddle the loss in this case upon defendant, who was guileless of negligence in the challenged transactions, or compel the plaintiffs, whose negligent conduct gave their bookkeeper, DeLisle, unrestrained opportunity to commit the forgeries complained of? It cannot be gainsaid that defendant furnished plaintiffs every opportunity during all the time covered by the forgeries to discover and arrest them, by rendering to plaintiffs monthly statements of the condition of their bank account, returning each time all vouchers, including the checks which bore the forged indorsement.

We are of the opinion that the negligence of plaintiffs attributable to their conduct as above recited is an effectual barrier to recovery in this action. *Merchants' Nat. Bank of Peoria v. Nichols & Shepard Co.*, 223 Ill. 41; *Morgan v. U. S. Mortgage & Trust*

*Co.,* 208 N. Y. 218; *Leather Manufacturers' Nat. Bank v. Morgan,* 117 U. S. 96; *California Vegetable Union v. Crocker Nat. Bank,* 37 Cal. App. 743, 174 Pac. 920.

It clearly appears from the proofs that had either of the plaintiffs given any attention whatever to the returned checks or to the state of their balances with the defendant bank, they would have known that De-Lisle was forging the name of the Federal Union Insurance Company to checks, cashing them and converting the money thus received to his own use. Nor can it be denied that defendant in rendering monthly statements with vouchers, checks, etc., to plaintiffs, showing the state of their accounts and all the transactions of the preceding month, acted according to the usual custom of bankers in Chicago. In *California Vegetable Union v. Crocker Nat. Bank, supra,* the court, under like circumstances, said:

"Where a party to a stated account, who is under a duty from the usages of business or otherwise, to examine it within a reasonable time after having an opportunity to do so, and give timely notice of his objections thereto, neglects altogether to make such examination himself, or to have it made, in good faith, by another for him, by reason of which negligence the other party, relying upon the account as having been acquiesced in or approved, has failed to take steps for his protection which he could and would have taken had such notice been given, the depositor is estopped by his conduct to question the conclusiveness of the account stated which arises out of the presentation to him of the account and his failure to examine it and detect the frauds contained therein, and give the bank notice thereof in order that it may protect itself against future frauds of a similar character."

In *Morgan v. U. S. Mortgage & Trust Co., supra,* the legal principle in issue here was approvingly applied and clearly stated as follows:

"Primarily a bank may pay and charge to its depositor only such sums as are duly authorized by the latter, and of course a forged check is not authority for such payment. It is, however, permitted to a bank to escape liability for repayment of amounts paid out on forged checks by establishing that the depositor has been guilty of negligence which contributed to such payments, and that it has been free from any negligence. A depositor who sends his passbook to be written up and receives it back with his paid checks as vouchers, is bound under certain circumstances to examine the passbook and vouchers, and report to the bank without unreasonable delay any errors which may be discovered."

The facts in the *Morgan* case were quite similar to those in the case at bar, as thus stated in the opinion:

"The trustee of an estate had a deposit account with a bank, and checks drawn thereon were signed by a rubber stamp imprinting the name of the estate, authenticated by the actual signature of either trustee. The trustees had a clerk, who was their agent in dealing with the bank. He made deposits, filled out the body of the checks, and obtained from the bank the passbook and vouchers and accompanying check list whenever the account was balanced. During a period of about a year he forged a number of checks aggregating a large sum, and employed in his forgeries the rubber stamp, with the simulated signature of one of the trustees in authentication thereof. Whenever the account was balanced the clerk withdrew from the vouchers and destroyed the checks forged by him and also the check list, and after as long a delay as convenient delivered the passbook and the genuine vouchers to the trustees, who knew that the passbook was balanced frequently and returned with the paid checks as vouchers and with a detailed list thereof. The trustees also had a journal and ledger account, * * * upon the stubs of which were entered the genuine checks presented to and paid by the bank. The trustee who examined the passbook and vouchers never asked for the check list,

which he knew was returned with the vouchers, and which would have shown the payment of the forged checks. He did not examine the balances shown by the passbook which were struck after the payment of the forged checks, but contented himself with a comparison of the genuine checks with the check book and with the books of the estate, which comparison disclosed no signs of the forgeries. The bank also paid interest on the account, and an examination of the passbook would have shown that the amount of interest credited thereon was much less than that on the books of the estate and less than would have appeared except for the payment of the forged checks."

The Court of Appeals held that the depositors by their own negligence in failing to properly examine their passbook and vouchers contributed to the payment of the forged checks, and hence the plaintiff could not recover from the bank the amount so paid. This case overruled *Weisser v. Denison,* 10 N. Y. 68.

In *Myers v. Southwestern Nat. Bank,* 193 Pa. St. 1, it was held, in conformity with the views of the United States Supreme Court and of the Court of Appeals of the State of New York in the case above cited, and other cases upholding the same doctrine, that if the plaintiff's duty to the bank had been performed at the proper time, the fact would have appeared that the bank had charged the plaintiff on his bank book with the payment of two items for which no vouchers appeared among the checks handed to him by the clerk, and that no objection having been made at the time of the presentation of the statements by the bank, the latter had the right to assume that everything was correct, including the two checks purporting to have been forged; that the silence of the plaintiff was tantamount to a declaration to that effect; and that in afterwards honoring checks signed by the same person, the bank had a right to consider

the fact that these signatures had been at least tacitly recognized by the plaintiff as genuine.

The forgeries of DeLisle were successfully carried out by reason of the failure of plaintiffs to make any objection to the monthly statements rendered to them. Furthermore, there is an additional reason for the application of this principle, arising from the fact that the statements and returned vouchers and checks were accompanied by the written request on the part of the bank, "Please report any difference in this statement to the auditor. * * * Please examine at once. If no error is reported within 10 days the account will be considered correct." The repeated failure of plaintiffs to heed this request justifies the application of the foregoing principles. In *Merchants Nat. Bank of Peoria v. Nichols & Shepard Co., supra,* it was held that a bank which has been guilty of no negligence may hold a depositor responsible for damages caused by want of ordinary care, under all the circumstances of a particular case.

The proofs demonstrate that the defendant bank was not guilty of any negligence in the premises, but that the losses by DeLisle's forgeries were occasioned by the negligence of plaintiffs in the manner hereinbefore detailed.

Errors in the instructions, if any, were not prejudicial to plaintiffs' rights.

For the foregoing reasons the judgment of the circuit court is affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE McSURELY and MR. JUSTICE DEVER concur.