HARTFORD ACCIDENT & INDEMNITY COMPANY *v.* MIDDLETOWN NATIONAL BANK.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued November 9—decided December 14, 1939.

*James W. Carpenter,* for the appellant (plaintiff).

*Bertrand E. Spencer,* for the appellee (defendant).

HINMAN, J.   From September, 1935, to February, 1936, the state highway commissioner had in his employ Alfred E. Callander and William G. Dumont, whose duties concerned the maintenance of highways under the jurisdiction of the commissioner and the making of orders, subject to the approval of the commissioner, for the purchase of highway materials. During October and November the state comptroller drew warrants or orders and pursuant thereto the state treasurer drew six checks of the state in amounts aggregating $1459.50 on Hartford banks, hereinafter referred to as drawee banks, naming in some Mary J. Doreen and in others M. J. Doreen as payee.   In drawing these warrants, orders and checks the comptroller and treasurer were induced to do so in reliance upon written applications and orders made by Callander or Dumont or both, requesting the payment of the sum for supplies allegedly furnished to the department by one designated as Mary J. Doreen, and in reliance upon the indorsement which each of the purported orders contained, in the form of a bill describing the account as being just and correct and as not having been paid, falsely and fraudulently signed by Evelyn M. Pulver, a maid employed in the home of Callander, in the name of Mary J. Doreen, and she indorsed thereon her mail address by that name as "P. O. Box 315, Chester, Connecticut."   These orders were so

made, signed and indorsed for the purpose of inducing the drawing of checks and falsely and fraudulently securing the funds thereof for Callander and Dumont.

The checks were, when issued, sent by mail, addressed to Doreen, P. O. Box 315, Chester, Connecticut. This post office box was actually owned by Callander; he received the checks but delivered them to Pulver, who thereupon indorsed them in the name Doreen, presented them to the defendant bank, secured payment thereof, and ultimately delivered the proceeds to Callander or Dumont or both. The defendant bank took the checks in the regular course of business for full value, after the usual introduction of Pulver to the bank as Doreen and in the belief that Pulver was in fact Doreen. When the checks were executed and delivered and for a long time thereafter, the highway commissioner, comptroller, treasurer, and the state believed that Doreen was a real person engaged in bona fide transactions of selling materials to the highway department, whereas neither any one of that name nor Pulver sold the department any of the materials described in the bills. None of them nor any agent of the highway commissioner except Callander and Dumont had any personal contact with Pulver. Shortly after the checks were cashed by the defendant it indorsed and presented them through the Hartford Clearing House to the drawee banks respectively. The latter paid them and charged the proceeds against accounts of the state but subsequently these banks recredited the amounts to the accounts of the state and thereafter each bank assigned to the plaintiff all its right, title and interest in and to claims against the defendant arising from these check transactions. Some materials referred to in the bills were in fact delivered to the state by Dumont and the net loss on the check transactions, calculated by subtracting from

the gross amount of the checks credits for materials actually delivered, amounts to $753.25.

From the facts found the trial court concluded that in drawing, executing and delivering the checks the state intended to make each of them payable to the invoicer of the materials described in each invoice, and intended to make them payable to the person known to the state as Doreen; that the state delivered the checks to Pulver in the name of Doreen by mailing them to her at the address designated by her; that they were actually delivered to that box, were obtained therefrom by Callander as a part of his fraudulent transactions, and were thereafter delivered by him to Pulver, who dealt with them personally with the defendant bank, to which bank she was known as Doreen; that the checks having been intended by the state to be payable to the invoicer, who was Pulver using the name Doreen, and having been delivered to that invoicer, were properly indorsable by Pulver as invoicer and payee, that on receiving the checks she secured the title thereto, and by indorsing them to the defendant bank she assigned such title to it; that by presenting the checks to the drawee banks and securing the funds thereon the defendant secured title to the funds and the right to retain them and is not liable to reimburse the drawee banks or to repay to the plaintiff the funds thus secured. The finding of facts, including those above stated, is not attacked by the plaintiff but it assigns error in the conclusions relevant and material to what it recognizes is the fundamental question determinative of the defendant's liability—whether or not the indorsements of the checks by Pulver in the name of Doreen were forgeries. If the indorsements were forged they would pass no title to the defendant which therefore would have no right to collect from the drawee banks. *Hartford-Connecticut*

*Trust Co.* v. *Riverside Trust Co.,* 123 Conn. 616, 622, 197 Atl. 766.

There may be eliminated, at the outset, certain elements present in some such cases but not in this instance. While the checks were made payable to a fictitious person, Doreen, there can be no claim that they were payable to bearer under § 4326 (3) of the General Statutes, inasmuch as the fact that the payee was fictitious was not known to the drawer. Also there is no claim that the plaintiff is barred by estoppel or that there was actual negligence on the part of the drawer of the checks. There is no good ground for the plaintiff's contention that delivery of the checks was not made to Pulver, as the court concluded, but to Callander because they were mailed, as directed by her, to a post office box which proved to have been rented by Callander, or because they were taken from the box by him and delivered by him to her. Other considerations hereinafter referred to aside, the fact that Pulver was a servant in Callander's household would make the procedure proper and usual, and even if, as the plaintiff claims but is not found, the giving of the address was at Callander's instigation, the delivery, for all present purposes, would still be to Pulver as the addressee. Also, this is not a case where, as in some, a check, instead of being sent to the person intended, was by mistake sent to another person who indorsed and collected it in the name of the payee, or one where the check was delivered to an impostor upon his representation and in the belief that he was the agent of the person named as the payee. "When the check is sent to the payee by mail the rule is that title to the check passes to the payee and there is a complete delivery at the time of mailing, if the check was mailed by the drawer at the direction of the payee, or in response to his request." Brady, Bank Checks

(2d Ed.) 51. The designation by Pulver of post office and box number cannot be construed otherwise than as a request to mail payment to that address.

In such a case as this, where the payee named was not already known to the maker, or particularly identified by the check by some designation, description or title, in addition to the name, the maker is to be held to have intended to make the instrument payable to the person before him, or to the person writing at the other end of the line in case the negotiation is by correspondence. Brannan, Negotiable Instruments Law (6th Ed.) 354. The intention of the drawer does not depend upon the actual existence or nonexistence of a person of the name inserted in the instrument as payee. 8 C. J. 179. "While the decisions upon the question of the right of the bank to pay the check to the impostor or on his indorsement are not entirely consistent, according to the weight of authority, where the drawer of a check has dealings with an impostor who assumes a false name, and the check is intended for the person with whom the drawer is dealing, payment of the check by the bank to such impostor or on his indorsement will be authorized and binding upon the depositor. In such cases the principle that, as between two innocent persons, the one whose act was the cause of the loss should bear the consequences applies. The transaction begins with the depositor, and it is his duty to use diligence to ascertain the identity of the party with whom he deals. The bank has a right to believe that the depositor has acted with full knowledge of the party to whom he gave the check for the money, and its duty to him is discharged when it satisfies itself that payment was intended to be made to the party who presented it. Also, in such a case the intention with which the drawer issued the check has been carried out. The person has been paid

to whom he intended payment should be made. There has been no mistake of fact except the mistake which he made when he issued the check, and the loss is due, not to the bank's error in failing to carry out his intention, but primarily to his own error, into which he was led by the deception previously practiced upon him." 7 Am. Jur. 435, and see numerous cases cited in note thereto; *Land Title & Trust Co. v. Northwestern National Bank,* 196 Pa. St. 230, 234, 46 Atl. 420; *Security-First National Bank v. United States* (C. C. A. 1939) 103 Fed. (2d) 188, 190. "We think that the rule is that where . . . the drawer of a check delivers it, for a consideration which turns out to be fraudulent, to an impostor under the belief that he is the person whose name he has assumed and to whose order the check is made payable, a bona fide holder for a valuable consideration paid to the impostor upon his indorsement of the payee's name, is entitled to recover from the drawer, it appearing that the person to whom the check was delivered was the very person whom the drawer intended should indorse it and receive the money, and the drawer made no inquiry before issuing the check concerning the identity or credit of the named payee, who was unknown to the drawer." *Montgomery Garage Co. v. Manufacturers Liability Ins. Co.,* 94 N. J. L. 152, 154, 109 Atl. 296; and see cases in notes, 22 A. L. R. 1228, 52 A. L. R. 1326, 112 A. L. R. 1435.

It is to be noted that this case involves only the use by Pulver of a fictitious name for the purpose of dealings with the drawer as distinguished from situations, present in many of the cases, where the name assumed is that of the actual owner of property or right which furnishes the supposed consideration, carrying with it a misrepresentation thereby of an ownership which in

reality was in the person whose name has been falsely assumed. See note, 112 A. L. R. 1435,,and other A. L. R. notes, supra. The latter was the situation in *Cohen* v. *Lincoln Savings Bank,* 275 N. Y. 399, 10 N. E. (2d) 457, 112 A. L. R. 1424, on which the plaintiff principally relies. In that case a check made payable, by indorsement, to Harry Wolter, who was owner of a condemnation award for the purchase of an interest in which the check was given, was delivered to an impostor who was introduced as Wolter, in the belief that he was the owner. The situation was similar also in *Tolman* v. *American National Bank,* 22 R. I. 462, 48 Atl. 481, and in *Murphy* v. *Metropolitan National Bank,* 191 Mass. 159, 77 N. E. 693, this element being held in the latter case to distinguish it from *Robertson* v. *Coleman,* 141 Mass. 231, 4 N. E. 619. In most of the cases in which that element was present, however, the rule in favor of an innocent holder as against the drawer or maker has, notwithstanding, been upheld and applied. In the present case, as above noted, the checks were paid by the defendant bank to the person to whom the state intended they should be paid, viz. the person from whom it believed that it had purchased materials. Although it in fact received no materials from the person in whose favor it drew the checks, having been defrauded into a belief that it had purchased from and owed money to a person known to it as Doreen, it intended, when it issued the checks, that they should be paid to the person from whom, as it then believed, it had made the purchase. There was an actual person, calling herself Doreen, although that was not her real name, and it was that person to whom the state intended its checks should be paid, and they were so paid. *Corinth Bank & Trust Co.* v. *Security National Bank,* 148 Tenn. 136, 252 S. W. 1001; *Meridian National Bank* v. *First National Bank,*

7 Ind. App. 322, 33 N. E. 247, 34 N. E. 608; *Robertson v. Coleman,* supra.

While *Commonwealth* v. *Globe Indemnity Co.,* 323 Pa. St. 261, 185 Atl. 796, and *Jordan Marsh Co.* v. *National Shawmut Bank,* 201 Mass. 397, 87 N. E. 740, concerned checks which had been issued in the name of fictitious persons who had been fraudulently represented to the drawer, by an employee, as entitled to payment, these cases differ from the present one in the material respect that possession of the checks was subsequently obtained by the defrauding employee, indorsed by him with the name of the fictitious payee and cashed, upon that indorsement. Therefore the indorsements were properly held to be forgeries and the cashing bank liable. *Hartford-Connecticut Trust Co.* v. *Riverside Trust Co.,* supra, 622. Such a situation is analogous to what it would have been had Callander, having taken the checks from the post office, retained and indorsed them in the name of Doreen and the defendant had cashed them upon his indorsement. The legal situation is not changed even if Pulver's acts in the matter were devised and procured by Callander as a part of a fraudulent scheme ultimately to obtain for himself the proceeds of the checks, since her part in the transaction comprises the requisites, under the rule above stated, justifying the defendant in cashing and collecting the checks.

While in many of the cases there was personal contact between the drawer and the payee either before or at the time of the execution of the check, such cases as involved, instead, communication by mail develop no such distinction on that ground as the plaintiff claims, and no sound reason therefor appears. The rule as to intent of the maker in naming a payee, as stated by Brannan, op. cit., 354, indicates no difference between a person who is "before" the maker and one

"writing at the other end of the line, in case the negotiation is by correspondence." In a note to *Montgomery Garage Co.* v. *Manufacturers Liability Ins. Co.,* supra, in 34 Harvard Law Review, 77, it is stated that "the majority of decisions draw no distinction between impersonation by correspondence or in the presence of the victim. . . . That the result should be the same, whether the impostor appears in person or whether he acts through correspondence, would appear to be the better reasoning. . . . Why would it not be consonant with justice to say in all these cases that so long as there is an intent to deal with the very party who is actually present, writing, telegraphing, or telephoning, that intent shall be paramount whenever the rights of a bona fide purchaser intervene?" In *Uriola* v. *Twin Falls Bank & Trust Co.,* 37 Idaho 332, 215 Pac. 1080, although the negotiations by which an impostor obtained a check as a loan upon a certificate of deposit which had been stolen by him was by correspondence, the rule was applied that, as between the drawer and an innocent purchaser, the former must bear the loss. Among other cases similarly illustrative are *Boatsman* v. *Stockmen's National Bank,* 56 Colo. 495, 138 Pac. 764; *Maloney* v. *Clark & Co.,* 6. Kan. 82; *Emporia National Bank* v. *Shotwell,* 35 Kan. 360, 371, 11 Pac. 141; *First National Bank* v. *American Exchange National Bank,* 63 N. Y. S. 58, affirmed 170 N. Y. 88, 62 N. E. 1089; *Security-First National Bank* v. *United States,* supra, 190.

The indorsement of a check by the person to whom it was actually issued and by whom the drawer intended that the money should be received is not a forgery although that person was acting under an assumed and fictitious name, especially when he is not really impersonating another individual. "The check was intended for a person, not a name. Names . . .

but serve to identify individuals. The check was received by the identical person or individual to whom its drawer intended to deliver it, and was by that person indorsed in the name in which it was issued to him." *Meridian National Bank & Trust Co.* v. *First National Bank,* 7 Ind. App. 322, 329, 33 N. E. 247, 34 N. E. 608; *Corinth Bank & Trust Co.* v. *Security National Bank,* supra, 152; *Halsey* v. *Bank of New York & Trust Co.,* 270 N. Y. 134, 139, 200 N. E. 671.

The finding supports the conclusions which establish that the indorsements by Pulver as Doreen were not forgeries but operated to vest title in the defendant bank and which justify the judgment in its favor. It is to be noted that in the present case this result accords with the comparative equities even more pronouncedly than in the ordinary case of this kind. It appears from admitted allegations of the complaint that the plaintiff was the insurer, it is to be assumed for adequate consideration, of the fidelity of employees of the highway commissioner including Callander, and under its policy was obligated to and did compensate for the net loss sustained by the issuance of the checks in question. In this action it sought, under assignments, to recoup the loss so insured against. Between it and the defendant as an innocent holder for value, the equities manifestly favor the latter.

There is no error.

In this opinion the other judges concurred.