MASTI-KURE PRODUCTS COMPANY ET AL. *v.* KURT APPEL ET AL.

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued February 5—decided April 20, 1971

*Charles G. Albom,* for the appellants (defendants).

*Irving S. Ribicoff,* with whom was *Louise H. Hunt,* for the appellees (plaintiffs).

SHAPIRO, J.  By writ dated August 17, 1967, the plaintiffs, Masti-Kure Products Company and its president Jules Silver, brought an action against the defendants, Pharm House, Inc., and its president Kurt Appel, seeking injunctive relief, damages and an accounting.  On August 24, 1967, a judge of the New London County Superior Court issued a show cause order directing the defendants to appear and show cause why a temporary injunction should not be granted.  On a stipulation of the parties dated September 12, 1967, the case was referred to the Honorable Thomas E. Troland, a state referee, act-

ing as the court, for the purpose only of hearing and determining the application of the plaintiffs for a temporary injunction. On September 28, 1967, the referee, after having heard the parties, issued a temporary injunction restraining the defendants from selling mastitis ointment or any other animal health or animal pharmaceutical product to certain customers of the plaintiff corporation. Under the terms of the injunction, the plaintiff corporation deposited a list of its customers, to whom the defendants were not permitted to sell, with the clerk of the Superior Court at Norwich. Provisions were made under which the defendants by inquiry were able to determine whether or not a potential customer was on the list. On April 11, 1968, on application of the plaintiffs praying that the defendants be adjudged in contempt for the violation of the temporary injunction, the court cited the defendants to appear and show cause why they should not be adjudged in contempt. On May 29, 1968, the court referred the case to the same referee for full disposition. On July 24, 1968, the show cause order and complaint came on for hearing before the referee. The parties orally stipulated in open court that judgment should be rendered for the plaintiffs on their complaint in a certain manner, substance and form. The referee adjudged the defendants to be in contempt as prayed for in the plaintiffs' motion to adjudge the defendants in contempt of court. The judgment rendered on July 24, 1968, awarded the plaintiffs damages of $10,000 and ordered the defendants to pay a fine of $200 to the plaintiffs. The defendants were also enjoined until July 24, 1969, from, among other things: "(1) selling mastitis ointment or any other animal health or animal pharmaceutical product to any customer of the Plaintiffs

. . . ; (2) selling mastitis ointment or any other animal health or animal pharmaceutical product to any person, firm or corporation who (or which) resells to any customer of the Plaintiffs if the original shipment to such person, firm, or corporation is with knowledge in Defendants of such person's, firm or corporation's intention to resell to a customer of the Plaintiffs." For the purposes of this injunction, the terms "sale," "sell," and "selling" were deemed to mean and include "sales, offers to sell, deliveries, offers to deliver, acceptances of orders to purchase or deliver and solicitation or otherwise contacting for the purposes of future or possible future sales or deliveries." For the purposes of this injunction, the term "customer of the Plaintiffs" was deemed to mean and refer to, among others, any customer of the plaintiffs appearing on the list of customers previously deposited with the clerk of the Superior Court at Norwich. From a judgment by the referee adjudging the defendants in contempt of court for the violation of this injunction, ordering that the injunction be extended until July 24, 1970, and awarding the plaintiffs $10,000 as their reasonable expenses, the defendants have appealed.

The defendants have made numerous assignments of error. We find that our decision on certain assignments of error, pursued in their brief, directed at the referee's findings of fact and a ruling on evidence is dispositive of the appeal. We need not, therefore, and do not consider other errors assigned and pursued.

An examination of the finding discloses that the defendants were found to have violated the injunction in the judgment of July 24, 1968, by making three shipments dated August 26, 1968, Septem-

ber 6, 1968, and November 19, 1968. We discuss first the relevant portions of the finding which relate to the shipments of August 26, 1968, and September 6, 1968.

I

The referee found that, as a result of the oral stipulation of the parties contained in the judgment of July 24, 1968, the issues on the complaint had been found for the plaintiffs. We agree, as the defendants argue in their brief, that the oral stipulation as recited in the judgment was of limited application and did not result in a judicial admission of the allegations of the complaint. The defendants have attacked, as having been made without evidence, certain findings of subordinate facts, which the plaintiffs seek to support by making reference to the judgment of July 24, 1968, and to the complaint. These findings are without evidence because, as we have already indicated, the judgment rendered on the complaint was of limited application.

The finding reveals that on seven occasions between May 3, 1968, and July 10, 1968, a period prior to the judgment of July 24, 1968, the defendants made shipments to Chem-Vet Laboratories, Inc., hereinafter referred to as Chem-Vet. Chem-Vet was not a forbidden customer appearing on the list deposited with the clerk of the Superior Court at Norwich. The referee made a further finding, which is attacked by the defendants, that the defendants knew that goods in these shipments were to be delivered or resold to Independent Buyers Association, hereinafter referred to as I.B.A. The I.B.A. was a forbidden customer whose name appears on the aforementioned list. The evidence to which the plaintiffs point as support for the finding that the

defendants knew that the goods in the seven shipments were to be delivered or resold to I.B.A. does not support such a finding.

The following facts are unchallenged by the defendants: (1) On August 26, 1968, the defendants shipped certain goods to Chem-Vet. The bill of lading which was prepared by the defendant Pharm House specified Pacific Intermountain Express as the carrier. (2) On September 6, 1968, the defendants shipped to Chem-Vet certain goods. The bill of lading which was prepared by the defendant Pharm House specified Pacific Intermountain Express as the carrier. (3) Chem-Vet issued its check, dated September 12, 1968, payable to the defendant Pharm House, in payment of the August 26, 1968, shipment. This check was deposited by the defendant Pharm House in its account in the Connecticut Bank and Trust Company on September 20, 1968. (4) Chem-Vet did not issue its check for payment of the alleged shipment to it dated September 6, 1968. (5) "The defendant Appel testified that, being apprehensive concerning whether Chem-Vet was selling to Independent Buyers Association after promising not to do so, he went to . . . [Chem-Vet] on October 4, 1968 to discuss the injunction and request the cooperation of Chem-Vet Company and, while there, he asked Chem-Vet to pay him for the September 6 shipment in cash, because Pharm House, Incorporated needed the money without delay, and that he was so paid in cash." (6) On October 7, 1968, Pharm House, Inc., recorded a cash deposit which was in the amount of its bill for the shipment of September 6.

The defendants challenge the following findings: (1) Pacific Intermountain Express has no record of receiving or carrying either the ship-

ment of August 26 or September 6. (2) The articles which an I.B.A. distributor had in his possession in Woodstock, Connecticut, on September 12, 1968, were part of the alleged shipment by the defendant Pharm House to Chem-Vet on September 6. (3) The shipments of August 26 and September 6 were not shipped to Chem-Vet but to I.B.A. This latter finding is open to no other construction than that the shipments of August 26 and September 6 were shipped directly to I.B.A. by the defendants.

The evidence to which the plaintiffs have referred is incompetent to support the finding that Pacific Intermountain Express has no record of receiving or carrying the shipments of August 26 or September 6. See *Danahy* v. *Cuneo*, 130 Conn. 213, 217, 33 A.2d 132. The evidence which the plaintiffs claim supports the finding that the articles in the possession of the I.B.A. distributor in Woodstock were articles from the alleged shipment of September 6, 1968, is totally speculative and in essence infirm to prove the fact found. The evidence to which the plaintiffs have referred to support the finding that the shipments of August 26 and September 6 were shipped to I.B.A. is either incompetent or so equivocal or so speculative that it does not support the finding. A defendant's guilt in relation to an alleged violation of an injunction cannot be predicated on such evidence.

## II

The referee made, among other findings, the following related to the shipment of November 19, 1968: On November 19, 1968, as a result of previous negotiations between the defendant Appel and Doctor Samuel Levine, who was in business under "the name and style of 'Samuel Perkins Com-

pany,' " certain goods were delivered to the Samuel Perkins Company by the defendant Pharm House. These goods were shipped with other goods which were described on a Pharm House invoice as "free goods." These "free goods" were for the benefit of Doctor Levine. Within a few days after November 19, 1968, a quantity of the goods contained in the shipment to the Samuel Perkins Company was in the possession of I.B.A. and was being sold by one of I.B.A.'s distributors. The referee concluded that the defendants knew that the goods in the shipment of November 19, 1968, were to reach I.B.A. From what is before us, it is clear that neither Doctor Levine nor the Samuel Perkins Company were customers to which the defendants were forbidden to sell.

From an examination of all the findings related to the shipment of November 19, 1968, we conclude that an erroneously admitted document affects certain essential findings in such a manner that the referee's conclusion that the defendants knew that the shipment to the Samuel Perkins Company was to reach I.B.A. cannot stand. At the trial, the plaintiffs sought to introduce into evidence a document, hereinafter referred to as exhibit PP, which had the following printed on the cover page: "Regulations For The Enforcement Of The Federal Food, Drug, And Cosmetic Act And The Fair Packaging And Labeling Act  Part 1, Title 21, Code Of Federal Regulations  U.S. Department of Health, Education, And Welfare  Food And Drug Administration . . . October, 1967." The ruling on the admissibility of exhibit PP was made essentially in the following manner:  The plaintiffs' counsel claimed that the publication "is an official reprint of Part 1, regulations for the enforcement of the Federal Food, Drug,

and Cosmetic Act, Fair Packaging and Labeling Act, Title 21, Chapter 1, Code of Federal Regulations." Defense counsel stressed that exhibit PP is an unofficial reprint. The exhibit was admitted into evidence after the defendant Appel gave an answer, in response to a question asked by the plaintiffs' counsel, which indicated that he had seen a document which bore on the first page "Title 21". The plaintiffs have alleged in their brief that exhibit PP is an official reprint. This is not so. In exhibit PP the following is specifically stated: "This publication is an unofficial reprint of Part 1 – Regulations for the Enforcement of the Federal Food, Drug, and Cosmetic Act and the Fair Packaging and Labeling Act of Title 21, Chapter 1, Code of Federal Regulations." Testimony by a witness that he has seen a document bearing on its first page "Title 21" is not a verification or authentication of the document offered in evidence as a true copy of the federal regulations. The admission of an unauthenticated unofficial purported copy of the federal regulations is patent error.

The referee was bound by the judgment based on the stipulation of the parties and, therefore, could not extend the injunction beyond July 24, 1969. We find that the plaintiff has failed to establish by the necessary proof the claimed violation of the injunction arising from the sales of August 26 and September 6, 1968.

There is error, the judgment is set aside and the case is remanded for a new trial limited to the claimed violation of the injunction relating to the shipment of November 19, 1968, and the penalty to be imposed in the event a violation is found to have occurred.

In this opinion the other judges concurred.