The Fidelity and Casualty Company of New York
*v.* Constitution National Bank

House, C. J., Cotter, Shapiro, Loiselle and Bogdanski, Js.

Argued October 4, 1974—decision released January 21, 1975

*Elmer W. Beasley,* for the appellant (defendant).
*Albert Zakarian,* for the appellee (plaintiff).

COTTER, J.  This action alleging a breach of contract was brought by The Fidelity and Casualty Company of New York (hereinafter referred to as Fidelity) as subrogee, assignee and successor in interest of a depositor, the Easy Finance Company (hereinafter referred to as the finance company), against the depositor's bank, Constitution National Bank (hereinafter referred to as the bank).  The Court of Common Pleas rendered judgment for Fidelity to recover of the bank $8,678.44, with costs, from which the bank has appealed.

In 1967 the finance company opened a commercial checking account with the bank in which it

made deposits and against which it drew checks under the customary and ordinary rules and restraints applicable to banking institutions. Under the provisions of the account, the bank agreed to credit the finance company's account with all amounts deposited therein and to charge its account with amounts paid out in accordance with and on proper orders issued by the finance company.

During August and September, 1967, the finance company maintained a credit balance in its account with the bank sufficient to pay all checks drawn by the finance company on that account during these months. At that time, Richard C. Bissette, the finance company's manager, was authorized to sign and issue checks on its behalf.

At various times during August and September, 1967, an automobile dealer in Chicopee Falls, Massachusetts, telephoned in loan applications to the finance company's office. Douglas McPheters, who at the time was a salesman for a Chicopee Falls automobile dealer, then submitted to the finance company loan applications and promissory notes allegedly signed by nine individuals. The finance company then gave Douglas McPheters contracts, payment books and checks made payable to and to be given to these individuals, in amounts altogether totalling $8,678.44. McPheters had formerly been a salesman in the Hartford area who had helped customers finance purchases through the finance company.

In drawing and issuing the nine checks, the finance company ordered the bank to pay the payees named thereon or to pay in accordance with the order of the named payees. Instead of deliver-

ing the checks as instructed, however, McPheters
and an accomplice signed each of the checks in the
name of the named payee, so that the resulting
endorsements were forgeries, for none of the named
payees had authorized anyone to sign his name.
The nine checks were then cashed by either the Safe
Deposit Bank and Trust Company of Springfield,
Massachusetts or by the Chicopee Bank and Trust
Company of Chicopee. The defendant bank there-
after paid each of the checks as it was presented
for payment by the intermediary banks; at the
time, it had no notice or knowledge of the facts and
circumstances surrounding the issuance of the
checks by the finance company, and nothing
appeared on the checks themselves to indicate
unauthorized endorsements, or any infirmity of
title. The defendant bank then charged the amounts
of the checks paid to the finance company's account.
None of the named payees ever received the checks
or the proceeds from the checks.

On discovering the forgery, the finance company
notified Fidelity, on or about October 9, 1967, and
then informed the banks through which the checks
had passed of the forged endorsements. On October
17 the finance company notified the defendant bank
of the forgeries; the bank, however, refused to
recredit the finance company's account in the
amount of the nine checks ($8,678.44).

Pursuant to the forgery provisions of the small
loan companies' blanket bond it had previously
executed, Fidelity paid the finance company's loss
for the nine checks in their total amount. By reason
of this payment, the finance company specifically
assigned all its rights against the defendant bank
to Fidelity, which became the subrogee, assignee

and successor in interest of the finance company. Fidelity brought this action to recover damages including the aggregate amount of the checks drawn by the finance company, paid by the defendant bank and charged to the finance company's account.

The bank has assigned error in several of the trial court's findings and conclusions involving the application of § 42a-3-406 of the General Statutes (§ 3-406 of the Uniform Commercial Code), which provides: "Any person who *by his negligence substantially contributes* to a material alteration of the instrument or *to the making of an unauthorized signature* is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business." (Emphasis supplied.)

At the outset we note that it has long been established in this state that "[a] conclusion of negligence is ordinarily one of mixed law and fact, involving the determination of the applicable standard of care, which is a question of law, and its application to the facts of the particular case, which is a question of fact. *Faille* v. *Hollett,* 152 Conn. 720, 721, 211 A.2d 701; *Marley* v. *New England Transportation Co.,* 133 Conn. 586, 591, 53 A.2d 296; see 2 Harper and James, Torts § 15.3, p. 880." *Smith* v. *Leuthner,* 156 Conn. 422, 424, 242 A.2d 728. Neither § 42a-3-406 nor any other part of title 42a of the General Statutes (Uniform Commercial Code) defines "negligence." Noting this lack of statutory guidance, two commentators on the code have stated that "[t]he acts sufficient 'sub-

stantially to contribute' to a material alteration or the making of an unauthorized signature are limited only by the limits of man's capacity for conducting slovenly business transactions." White & Summers, Uniform Commercial Code § 16-6. Nonetheless, courts which have interpreted this section of the code have held that "negligence" therein means the failure to exercise "reasonable" or "ordinary" care. *Dominion Construction, Inc.* v. *First National Bank of Md.,* 271 Md. 154, 315 A.2d 69; *Terry* v. *Puget Sound National Bank,* 80 Wash. 2d 157, 160, 492 P.2d 534; *Exchange Bank & Trust Co.* v. *Kidwell Construction Co.,* 463 S.W.2d 465, 469 (Tex. Civ. App.). By "reasonable care" in cases involving a question of negligence we mean the care which "the ordinarily prudent person under the circumstances" would exercise. *Steinhaus* v. *Steinhaus,* 145 Conn. 95, 97, 139 A.2d 55. Failure to exercise such care amounts to negligence. Id. The duty of reasonable care imposed upon the drawer under § 42a-3-406 is owed, furthermore, to the drawee, inter alia, to protect him from material alterations on the instrument or from the making of unauthorized signatures thereon. See *Fidelity and Deposit Co. of Md.* v. *Chemical Bank N.Y. Trust Co.,* 65 Misc. 2d 619, 621, 318 N.Y.S.2d 957, aff'd, 39 App. Div. 2d 1019, 333 N.Y.S.2d 726; 19 Connecticut General Statutes, Annotated (West Ed.), comment 4 (B). It is for this reason that no distinction is made under this code provision as to whether the signature which is forged is the signature of the negligent person. See 2 Anderson, Uniform Commercial Code, p. 945. Thus the provision applies where the drawer is deemed negligent in permitting a situation to arise in which the wrongdoer forges an endorsement of the payee's

name. Ibid.; see also *Society National Bank* v. *Capital National Bank,* 30 Ohio App. 2d 1, 7, 281 N.E.2d 563. The test of conduct amounting to "negligence" within the meaning of § 42a-3-406 appropriate to the facts of this case was whether a prudent person in the position of the finance company's manager, Bissette, having at his disposal only that amount of information and experience Bissette had concerning the purported loan applications, would have foreseen the danger of subsequent forgery by McPheters and his accomplice involved in making the purported loans and drawing and issuing checks the way Bissette did; if a prudent person would have foreseen such a danger, then the drawer, the finance company, acting through Bissette, cannot be said to have properly exercised its duty of ordinary care to the bank as required by the statute in so making the purported loans and in so drawing and issuing the checks. *Connecticut Savings Bank* v. *First National Bank & Trust Co.,* 138 Conn. 298, 304, 84 A.2d 267.

To support its claim that Bissette's conduct on behalf of the finance company constituted negligence within the meaning of § 42a-3-406, the bank introduced evidence that the finance company undertook no credit investigation, which would have revealed that the purported loan applicants had never in fact applied for loans from the finance company. In recent years, courts in other jurisdictions when ruling on the issue of the drawer's negligence under this section of the code have been inclined to hold that the failure to verify information on reports prior to drawing and issuing checks pursuant thereto amounts to negligent business conduct, either as a matter of fact; *Thompson Maple Products, Inc.* v. *Citizens National Bank,* 211

Pa. Super. 42, 47, 50, 234 A.2d 32, cited with approval, *In re Royal Electrotype Corp.,* 485 F.2d 394 (3d Cir.) ; or as a matter of law; *Fidelity & Deposit Co. of Md.* v. *Chemical Bank N.Y. Trust Co.,* supra; cf. *Prudential Ins. Co. of Am.* v. *Marine Nat. Exch. Bank,* 55 F.R.D. 436, 438 (E.D. Wis.).[1]

In so holding, the courts have adhered to the principle of construction embodied in the code to the effect that the statute's provisions should be "liberally construed and applied to promote its underlying purposes and policies"; § 42a-1-102 (1) ; one of these purposes being "to . . . modernize the law governing commercial transactions." § 42a-1-102 (2) (a). See White & Summers, Uniform Commercial Code § 4. (Significantly, such was the attitude adopted by this court in construing the predecessor to the current code, the Uniform Negotiable Instruments Law. *Austin, Nichols*

---

[1] In *Thompson Maple Products,* a clever nonlog hauler simply forged documents indicating that he had delivered logs to the drawer. The drawer's bookkeeper then made checks payable to various parties for these fictitious deliveries and the deceitful nonlog hauler forged the endorsements of these payees. The drawer itself had failed to follow its own procedure which required that its employee receiving the logs retain one copy of the document which showed the delivery; it had also left blank sets of documents readily accessible; and in effect it had sent the checks back to the purported payees in the hands of the same truckers who had allegedly delivered the logs. The Pennsylvania court held that the conduct exemplified by these facts, "viewed in its entirety," was sufficient to support a trial court's finding of negligence within the meaning of § 3-406 of the code. *Thompson Maple Products, Inc.* v. *Citizens National Bank,* 211 Pa. Super. 42, 47, 50, 234 A.2d 32.

In *Fidelity,* the New York court found the "know your customer" rule of the New York Stock Exchange helpful in determining the care owed by drawers of checks under § 3-406 of the Uniform Commercial Code. That rule requires brokers to use due diligence to learn the essential facts relative to their customers. The court held that the failure of a registered representative broker of the plaintiff's subrogor to attempt to verify the information it had

*& Co.* v. *Gross,* 98 Conn. 782, 785, 120 A. 596.) In this connection, it is noteworthy that the concept of negligence on the part of the drawer precluding its recovery in the event of forgery of the payee's endorsement has experienced dramatic transformations during the course of the history of modern commercial transactions. The law originated with the concept that there was no duty upon a depositor to look for forged endorsements, as there was with respect to forged signatures bearing the drawer's own name. See, generally, *Jordan Marsh Co.* v. *National Shawmut Bank,* 201 Mass. 397, 411, 87 N.E. 740; Kessler, "Forged Indorsements," 47 Yale L.J., 863, 891. However, as cases involving forgeries by employees or agents of the drawer came more frequently before the courts, the rule emerged that the drawer was under some sort of duty to the drawee both to prevent and to report forged endorsements, a duty which recognized the broader

---

received about customers from another person over the telephone, or to contact those customers personally, constituted negligence as a matter of law under that section of the code. *Fidelity & Deposit Co. of Md.* v. *Chemical Bank N.Y. Trust Co.,* 65 Misc. 2d 619, 620–21, 318 N.Y.S.2d 957, aff'd, 39 App. Div. 2d 1019, 333 N.Y.S.2d 726.

In *Prudential,* the District Court held that in an action to recover funds from defendant banks which had paid checks drawn by the plaintiff insurance company and on which the payees' endorsements were forged, the defendant banks' affirmative defense that the plaintiff in issuing the checks and in causing them to be delivered to addresses supplied by its agent was negligent in failing to verify with the policyholders the validity of each policyholder's loan application and permitting its agent to process false applications, and in hiring as its agent a person with a questionable background, constituted a valid defense under § 3-406 of the Uniform Commercial Code. *Prudential Ins. Co. of Am.* v. *Marine Nat. Exch. Bank,* 55 F.R.D. 436, 438 (E.D. Wis.). This was a ruling on a motion by the plaintiff to strike the affirmative defense. By implication, the court indicated that should the defendant banks prove their allegations, the plaintiff would be found to have been negligent and hence precluded from seeking recovery from the banks under § 3-406.

principle that the drawer owes a duty to the drawee to do whatever seems reasonable under the circumstances to prevent his own employees or agents from forging endorsements of checks drawn by him. See *Robertson Banking Co.* v. *Brasfield,* 202 Ala. 167, 79 So. 651; *Osborn* v. *Corn Exchange National Bank,* 218 Ill. App. 28, 38; Britton, Bills and Notes (2d Ed.) § 143. Today, in holding the drawer precluded from recovery from the drawee under § 3-406 of the Uniform Commercial Code because of negligence which facilitates the forgery of endorsements executed by a person who is not the drawer's own employee or agent but is merely someone with whom the drawer has done business, courts are carrying this historical development a further step and enlarging the scope of the traditional principle of commercial law that, as between two innocent persons, the one whose negligence was the cause of the loss should bear the consequences; *Hartford Accident & Indemnity Co.* v. *Middletown National Bank,* 126 Conn. 179, 185, 10 A.2d 604; so as to place the ultimate loss upon the person who first dealt directly with the wrongdoer and was careless in so dealing, thereby providing the wrongdoer with the means of carrying out his offense. See, generally, *Hardex-Steubenville Corp.* v. *Western Pa. National Bank,* 446 Pa. 446, 285 A.2d 874; see also *Goldsmith* v. *Atlantic National Bank,* 55 So. 2d 804, 805 (Fla.); note, 42 A.L.R.2d 1070, 1072–73; note, "Allocation of Losses from Check Forgeries under the Law of Negotiable Instruments and the Uniform Commercial Code," 62 Yale L.J., 417, 462 n.229; note, "The 'Know Your Customer' Rule of the New York Stock Exchange: Liability of Broker-Dealers under the Uniform Commercial Code and Federal Securities Laws," 1973 Duke

L.J. 489; see also 2 Anderson, Uniform Commercial Code, p. 945. It is for this reason that drawers are held to be precluded from asserting the unauthorized signature against a drawee where such negligence has been a key to the success of the forgery and, thus, substantially contributed to the making of the unauthorized signature within the meaning of § 3-406 of the code. See, e.g., *Fidelity & Deposit Co. of Md.* v. *Chemical Bank N.Y. Trust Co.,* 65 Misc. 2d 619, 621, 318 N.Y.S.2d 957, aff'd, 39 App. Div. 2d 1019, 333 N.Y.S.2d 726; *Thompson Maple Products, Inc.* v. *Citizens National Bank,* 211 Pa. Super. 42, 46, 234 A.2d 32; *Dominion Construction, Inc.* v. *First National Bank of Md.,* 271 Md. 154, 315 A.2d 69; 2 Anderson, op. cit.

The trial court, however, although requested, refused to find as a fact that Bissette, the finance company's manager, failed to conduct a credit investigation to verify the information on the purported loan applications. "Where the finding fails to include admitted or undisputed facts, this court has the power to correct it. *Morrone* v. *Jose,* 153 Conn. 275, 277, 216 A.2d 196; *National Broadcasting Co.* v. *Rose,* 153 Conn. 219, 223, 215 A.2d 123." *Brockett* v. *Jensen,* 154 Conn. 328, 330, 225 A.2d 190; Practice Book § 628 (a); Maltbie, Conn. App. Proc. § 157. An "undisputed" fact is a fact "which the court has not deemed sufficiently material to add to the finding, or has inadvertently omitted from it." *Dexter Yarn Co.* v. *American Fabrics Co.,* 102 Conn. 529, 541, 129 A. 527; Black's Law Dictionary (4th Ed. Rev.) 1697. Elaborating upon this definition, we have stated that "[t]o secure an addition on this ground, it is necessary for an appellant to point to some part of the

appendix, the pleadings, or an exhibit properly before us, which discloses . . . that the fact in question was true or that its truth was conceded to be undisputed." *Stoner* v. *Stoner,* 163 Conn. 345, 347, 307 A.2d 146; *Brown* v. *Connecticut Light & Power Co.,* 145 Conn. 290, 293, 141 A.2d 634; Practice Book § 628 (a); Maltbie, Conn. App. Proc. § 158.

In this case, the evidence in question consisted of testimony by Roger Knight, an investigator of the Underwriters Adjusting Company, of which group Fidelity is a member, Fidelity's own witness, who stated that no credit investigation had been conducted by the finance company. It has been stated that "testimony supporting a fact may be such that the court could not reasonably disbelieve it; thus where the court accepted all the other testimony of a witness, it was held that it could not disregard a statement consistent with that testimony and reasonable." Maltbie, Conn. App. Proc. § 156; *Judd* v. *Metropolitan Life Ins. Co.,* 111 Conn. 532, 537, 150 A. 514. Here, the court accepted all of Knight's other testimony relating to his investigation of the forgery. In light of the foregoing, the finding must be corrected to include the fact that Bissette failed to conduct a credit investigation, a finding which is material to the questions of law presented on the appeal.

The defendant bank has assigned error in the conclusion of the trial court that it failed to meet the burden of proving its special defense that Bissette's conduct amounted to negligence within the meaning of § 42a-3-406. Such a conclusion must be tested by the finding. *Hutensky* v. *Avon,* 163 Conn. 433, 437, 311 A.2d 92. At least four material facts found by the trial court were of

significance in its reaching this conclusion. The court found that an automobile dealer telephoned in applications for the purported loans to the finance company; that later McPheters delivered to Bissette written loan applications allegedly signed by the purported loan applicants; that McPheters delivered promissory notes to Bissette also allegedly signed; and that McPheters had been a salesman in the Hartford area previously who had helped customers finance purchases through the finance company. It cannot be said that the court was correct in finding that the written loan applications submitted to Bissette by McPheters were in fact "signed." Knight testified that there were in existence copies of the purported loan applications which McPheters is supposed to have submitted to Bissette. However, Knight at no time testified that any of these applications actually bore signatures allegedly made by the purported loan applicants; as a matter of fact, with respect to copies of at least one of the applications in his possession, his testimony might be interpreted as indicating that no signatures appeared thereon. This court will strike a finding where it is unsupported by evidence. *Providence Electric Co.* v. *Sutton Place, Inc.*, 161 Conn. 242, 245, 287 A.2d 379. In addition, a finding cannot be based on incompetent, equivocal, or speculative evidence. *Masti-Kure Products Co.* v. *Appel*, 161 Conn. 108, 114, 285 A.2d 346. There was no other evidence before the trial court tending to support its finding that the applications were "allegedly signed" by the individuals who were to become the payees named on the checks. That portion of the finding, then, must be stricken.

Whether the applications submitted to Bissette by McPheters bore any signatures was of consider-

able importance to the trial court in its evaluation of Bissette's conduct as negligent or nonnegligent. The significance of a signature appearing on documents like the automobile loan applications in this case lies in the fact that a signature is "the name of a person written with his own hand to signify that the writing which precedes accords with his wishes or intentions." Webster's Third New International Dictionary 2116. The signature to a writing is placed there, moreover, for the purpose of authenticating it. *United States* v. *Wortman*, 326 F.2d 717, 721-22 (7th Cir.); *Brown* v. *State Auto. Ins. Assn. of Des Moines*, 216 Minn. 329, 337, 12 N.W.2d 712; 80 C.J.S. 1286, Signatures, § 1. The appearance of the signature of the purchaser on documents involved in the financing of automobile sales is of special significance; indeed, we have elsewhere taken judicial notice of the custom in situations analogous to those presented by the facts of this case, of financing automobile sales by a purchaser's signing a conditional sales agreement with the dealer and giving the dealer notes for the balance due on the purchase price, after which the dealer assigns the notes and bills of sale to a company engaged in the automobile financing business. *Walcott* v. *Skilton*, 139 Conn. 424, 425, 426, 94 A.2d 792. If there were no signatures on the loan applications presented to Bissette, then, he may well have been obliged to challenge the authenticity of the documents, and to question whether the nine named individuals had indeed ever really applied for the loans. We cannot determine the extent to which the trial court relied upon its unsubstantiated finding that the applications were signed and its refusal to find that no credit investigations were made by Bissette to determine either the

identity of the purported loan applicants or their ability to repay the loans in reaching its conclusion that the bank failed to meet its burden of showing that Bissette's conduct amounted to negligence under § 42a-3-406.

This court has deemed it appropriate in the past to order a new trial where it has appeared that a trial court's conclusion may have been influenced by an erroneous finding and unsupported by the subordinate facts. *Golden* v. *Lyons,* 151 Conn. 21, 25, 27, 193 A.2d 487; see also *Providence Electric Co.* v. *Sutton Place, Inc.,* supra, 245; *Churchward* v. *Churchward,* 132 Conn. 72, 79, 80, 42 A.2d 659. Such a disposition is proper in this case as well, so that the trial court may correctly determine whether the conduct of Bissette on behalf of the finance company constituted negligence within the meaning of § 42a-3-406 as elucidated herein.

There is error; the judgment is set aside and a new trial is ordered.

In this opinion, SHAPIRO, LOISELLE and BOGDANSKI, Js., concurred.

HOUSE, C. J. (dissenting). I am satisfied that the trial court's finding of fact is fully supported by the evidence and that that finding amply supports its conclusions not only that the defendant failed to sustain the burden of proof as to the allegations of its special defenses but, to the contrary and affirmatively, that the finance company was not negligent in drawing and issuing the checks in question and that its conduct did not substantially contribute to or proximately cause the making of the unauthorized endorsements and forgery. I would, accordingly, find no error.