DOMINION CONSTRUCTION, INC. *v.* FIRST NATIONAL BANK OF MARYLAND

[No. 177, September Term, 1973.]

*Decided February 7, 1974.*

The cause was argued before MURPHY, C. J., and BARNES, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*John F. Fader, II,* with whom was *Theodore J. Potthast, Jr.,* on the brief, for appellant.

*Christopher A. Hansen,* with whom was *Jesse Slingluff* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

Having been unsuccessful in its district court suit against First National Bank of Maryland (First National), Dominion Construction, Inc. (Dominion), appealed to the Circuit Court for Baltimore County (Jenifer, J.) which affirmed the judgment of the lower court. Dominion then filed a Petition for Writ of Certiorari to this Court. We granted the writ so that we might consider the question this case presents under the Uniform Commercial Code (UCC), which requires an interpretation of Maryland Code (1957, 1964 Repl. Vol.) Art. 95B, § 3-406.

In 1971, Dominion entered into a contract with the Baltimore County Board of Education to construct the Randallstown Elementary School. It then entered into a subcontract with "Town & Country Decorating, Inc." (Town & Country) for the performance of the tile work on that project. Town & Country purchased materials for the job from Conwed Corporation (Conwed). On June 22, 1971, the three corporations entered into what the parties here have labeled a "joint pay agreement." Actually, the arrangement merely consisted of a letter from Conwed [Corporation] to Dominion requesting the latter to "enter into a joint pay agreement with Town & Country Decorating, Inc.," and notifying Dominion of the charges then due from Town & Country to Conwed for materials furnished on the school project.

Each of the companies apparently understood that a "joint pay agreement" connoted payment of Town & Country's account, under its subcontract, by a check from Dominion payable jointly to Town & Country [the subcontractor] and Conwed [the materialman]. Such arrangements—designed to protect the general contractor and materialman — are not uncommon in the construction industry.

On July 27, 1971, Dominion issued a check drawn upon First National in the amount of $3,933.20 — the amount which it then owed Town & Country — payable to "Town & Country Decorating and Conwed." First National was not advised of the "joint pay agreement." The check was delivered to one Charles Gabriszeski (Gabriszeski), an employee of Town & Country assigned to the project. On the same day, Gabriszeski, without authorization, took the check to a suburban branch office of First National, where he opened a business checking account in the name of "Charles Gabriszeski T/A Town & Country Decorating & Conwed." The check was deposited in that account. He indicated on the signature card that he was a self-employed acoustical tile contractor; he also furnished addresses and telephone numbers for both "home" and "business," a bank reference and his social security number.

At the trial, the assistant branch manager who handled the transaction stated:

> "When I took the check from Mr. Gabriszeski, I read the name and said this is a most unusual name why do you use this. And he said because I use the products of Conwed and I like the name."

She also testified that when a check is made payable to two persons, the endorsement of each is required. When asked whether this check put her "on notice of the fact that maybe it was payable to different people," she replied "absolutely not."

The bank employee explained that she did not call Dominion because "I accepted the check from Mr. Gabriszeski for deposit. If I would attempt to call everyone that gives me a check for deposit, I'd be all day." She also

testified, "Town & Country and Decorating [sic] could be a trading as name. I took it as such. Conwed itself is an unusual name but not to have two names in a title."

Another bank representative testified that when it was brought to his attention by Dominion that the check had been accepted on July 27 without a personal endorsement, he called Gabriszeski who returned on September 21, 1971, and placed his personal signature below the "trade name." He also testified:

> "He signed it and I said this is a trading as account and he said it is. I questioned him what is Town & Country Decorating and Conwed and he said I use the name of Conwed to let my clients know that I use this product."

Suffice it to say that by the time Gabriszeski returned on September 21 to personally endorse the check, there were no longer any funds remaining in the recently opened account. The result of these events was that Conwed did not receive the amount then owed to it by Town & Country — $2,908.84. Hence, it made a claim in that sum against a performance bond which had been issued to Dominion.

Having reimbursed Conwed for this loss, Dominion brought suit against First National for the $2,908.84, alleging that the latter had breached its duty "not to cash or pass such a check except for the endorsement of the designated payees." The case came on for trial before Judge Buzzell of the District Court of Maryland for District 8 (Baltimore County) who found in favor of First National. He held that Dominion had been guilty of negligence which "contributed substantially" to the making of an unauthorized signature by Gabriszeski and the resulting payment of the proceeds to him. On appeal to the circuit court, the district court decision was affirmed by Judge Jenifer who also held that Dominion's manner of drawing the check constituted negligence which "substantially contributed to the negotiation of the instrument by Gabriszeski."

The single question presented therefore is whether the

two courts below correctly interpreted and applied § 3-406 of Art. 95B, the UCC, which provides:

> "Any person who *by his negligence substantially contributes* to a material alteration of the instrument or *to the making of an unauthorized signature* is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument *in good faith* and in accordance with the *reasonable commercial standards* of the drawee's or payor's business." (emphasis added).

We think the decisions reached by both the circuit court and the district court were correct; hence, we affirm.

Three questions arise in the application of § 3-406 to this case:

> (1) Did the actions of Dominion, in drawing the checks as it did, constitute negligence?
>
> (2) Did the negligence of Dominion, if any, substantially contribute to the unauthorized signatures by Gabriszeski?
>
> (3) If the first two issues are answered affirmatively, did First National pay the check "in accordance with ... reasonable commercial standards of [its] business"?

Although a drawee in such circumstances is required to act "in good faith," that element of § 3-406 is not an issue here.

(1)

In attacking the trial judge's finding of negligence, Dominion contends that its failure to designate the payees correctly on the check may have been a "technical" error, but rose no higher than "mere laxity," and therefore was not "negligence" within the meaning of § 3-406.

Since neither § 3-406 nor any other part of the UCC defines "negligence," we look to the Official Comment for

guidance. At the very outset, it points out that § 3-406 has no statutory antecedent. Comment 3 states that:

"No attempt is made to define negligence which will contribute to an alteration. The question is left to the court or the jury upon the circumstances of the particular cases . . . ."

Comment 7 states:

" The section applies the same rule to negligence which contributes to a forgery or other unauthorized signature, as defined in this Act (Section 1-201). . . . As in the case of alteration, no attempt is made to specify what is negligence, and the question is one for the court or the jury on the facts of the particular case."

While § 3-406 itself is a creature of the UCC, the question whether under given circumstances one has negligently brought about an alteration or unauthorized signature is not wholly without precedent in Maryland. *See Martin Co. v. Fidelity Bank*, 218 Md. 28, 145 A. 2d 267 (1958), where we were concerned with the application of Section 23 of the Negotiable Instruments Law (§ 3-404 of the UCC). In that case, the Martin Company had conducted business relationships with two companies bearing the same names. A group of six checks was drawn payable to the wrong one; even the address of the wrong company appeared on the face of each check. They were then mailed to the wrong payee which obtained payment by forged endorsements.

On being sued by the drawer, the bank contended that the former was precluded from asserting the forgeries because of its negligence. The finding of the trial court that the drawer was negligent in drawing and in mailing the checks to the wrong payee was affirmed on appeal to this Court. While we did not expressly so state, that we there applied the standard of ordinary care is implicit in our decision.

It is no longer open to question that the term, "negligence," as used in § 3-406, means the failure to exercise ordinary care, *Gast v. American Casualty Company*

*of Reading, Pa.,* 99 N. J. Super. 538, 240 A. 2d 682, 685 (1968); *Exchange Bank & Trust Co. v. Kidwell Constr. Co.,* 463 S.W.2d 465, 469 (Tex. Civ. App. 1971), *aff'd* 472 S.W.2d 117 (Tex. 1971); *Terry v. Puget Sound National Bank,* 80 Wash. 2d 157, 492 P. 2d 534, 535 (1972); *see Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 348 F. Supp. 969, 977 (W. D. Mo. 1972). *But see National Bank & Tr. Co. of Cent. Pa. v. Commonwealth,* 9 Pa. Cmwlth. 358, 305 A. 2d 769 (1973), where a sharply divided Court rejected the standard of ordinary care in applying § 3-406, concluding "that a finding of more than ordinary negligence is necessary under the language of § 3-406 before that section operates to preclude recovery on a forged endorsement," 305 A. 2d at 772. We decline to follow that isolated decision which departs from the overwhelming weight of authority. The sounder view is reflected by the well-reasoned dissenting opinion in that case.

Although the trial judge rested his finding of negligence primarily on Dominion's failure to identify each of the intended payees as corporations, it is apparent from the record that, in reaching that decision, he also considered these additional facts which were uncontradicted: That Dominion failed to advise First National of the "joint pay agreement," and that it failed to draw the check so as to make it properly payable to joint payees. Oddly enough, Dominion incorrectly named the very payee who had requested the joint payment. We need not decide whether any of these acts or omissions, taken individually, would have been sufficient to support the court's ruling; in the aggregate they were. The finding of negligence, therefore, was amply supported by the totality of the evidence. As such, it was in accord with the statement in Official Comment 7 that the determination of negligence *vel non* should turn "on the facts of the particular case." We cannot say that the judgment, insofar as it rested on this determination, was clearly erroneous. Maryland Rule 886.

(2)

Moving to the next requirement of § 3-406, Dominion

contends that the words, "substantially contributes," as used therein, mean that "the negligence of the drawer must directly and proximately cause" the unauthorized signature for the preclusion to be invoked under the statute. It maintains, of course, that First National has failed to sustain its burden of proof in this regard.

Unquestionably "proximate cause" was the generally applied rule prior to the adoption of the UCC, *Martin Co. v. Fidelity Bank, supra; cf. Fargo National Bank v. Massey-Ferguson, Inc.,* 400 F. 2d 223, 227 (8th Cir. 1968). In some cases, it has been followed even under the UCC. *See e.g., Society Nat. Bank of Cleveland v. Capital Nat. Bank,* 30 Ohio App. 2d 1, 281 N.E.2d 563, 566 (1972). The majority of courts which have had occasion to consider the question, however, do not equate "substantially contributes" with "proximate cause," *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra; Gast v. American Casualty Company of Reading, Pa., supra; Fidelity & Deposit Co. of Md. v. Chemical Bank of N. Y. T. Co.,* 65 Misc. 2d 619, 318 N.Y.S.2d 957 (1970) *aff'd mem.,* 333 N.Y.S.2d 726 (1972); *Gresham State Bank v. O and K Construction Co.,* 231 Ore. 106, 370 P. 2d 726, 100 A.L.R.2d 654 (1962); *opinion clarified, rehearing denied,* 231 Ore. 106, 372 P. 2d 187 (1962); *Thompson Maple Products v. Citizens National Bank,* 211 Pa. Super. 42, 234 A. 2d 32, 34 (1967).

In *Fidelity, supra,* the court quoted with approval from *Thompson, supra,* stating:

> "This section [§ 3-406] abandons the language of the older cases (negligence which directly and proximately affects the conduct of the bank in passing the forgery), shortened the chain of causation and modified the doctrine by specifying negligence which substantially contributes to the making of an unauthorized signature. . . . McKinney's UCC 3-406 Practice Commentary indicates that the section gives statutory sanction to the duty of the drawer to protect the drawee against forgeries, imposes additional duties on a bank's customer and will increase the duty of care

owed to the drawee by the one who sets the instrument in motion." 318 N.Y.S.2d at 959.

The common thread running through these cases is that the substantial contribution test under the UCC includes negligent conduct on the part of the drawer which previously had been viewed as too remote in the chain of causation to preclude recovery. The new standard has replaced "proximate cause" with the "substantial factor" test enunciated in Restatement, Second, Torts § 431 (1965). The discussion of the "substantial factor" test in Prosser, Torts § 41 (4th ed. 1971) leaves no doubt that it is broader than the "but for" formula traditionally applied in deciding questions of "proximate cause," *Bagby v. Merrill. Lynch, Pierce, Fenner & Smith, Inc.*, supra, at 978, nn. 6, 7; *Gast v. American Casualty Company of Reading, Pa.*, supra, at 685; *Gresham State Bank v. O and K Construction Co.*, supra, at 732.

The phrase, "substantially contributes," in § 3-406 has been applied in an assortment of factual situations with equally varied results. Since it is generally regarded as broader than the "but for" test, it follows that if an act is a substantial factor in causing a particular result, the negligent person will not be absolved from liability merely because other elements may have contributed to that result. In the case at bar, however, the trier of fact could even have found under the evidence that "but for" Dominion's negligence, there would have been no unauthorized signature. At the very least, therefore, whether Dominion's negligence — as previously explicated — was a substantial factor in causing the forgery presented a question of fact. Hence, we will not disturb the trial judge's decision on this issue.

### (3)

Lastly, we consider Dominion's argument that notwithstanding its own conduct in drawing the check, it is not precluded from contesting the unauthorized signature because First National paid the check contrary to "reasonable commercial standards" of the banking business.

Specifically, it urges that the word "and," instead of the ampersand ("&") in the designation of the payee should have put the bank employee on notice of a "joint pay" check; and that she should have been on "sufficient notice to make that one phone call." The district court did not decide this issue, undoubtedly because Dominion presented no evidence of what was required by ordinary banking standards. Dominion's argument was rejected by the circuit court for the same reason. While we question whether the issue has been properly preserved for appellate review, Rule 885, we shall nevertheless consider it because of its importance to a thorough application of § 3-406.

The requirement of "reasonable commercial standards" in the context of § 3-406 has been considered by only a few courts. In *Gresham State Bank v. O and K Construction Co.,* *supra,* a bookkeeper in a construction office received a number of checks payable to his employer, on which, by the use of a rubber stamp supplied by the employer, he was able to endorse "O & K Construction Co., Route 1, Gresham, Oregon"; beneath that he signed his name followed by the designation "Office Manager." Over a period of three years, he cashed 30 checks at a store located a half block from the construction company. The store made no inquiry concerning the employee's right to endorse and cash the checks. In holding that the store did not make payment in accordance with the reasonable commercial standards of its business, the Oregon court noted that the employee did not cash the checks in connection with any purchase of items on behalf of the construction company, and that he received in cash the whole amount of each check, some of which were for substantial sums. *See Salsman v. National Community Bank of Rutherford,* 102 N. J. Super. 482, 246 A. 2d 162, 168 (1968), *aff'd* 105 N. J. Super. 164, 251 A. 2d 460 (1969).

In *Cooper v. Union Bank,* 107 Cal. Rptr. 1, 507 P. 2d 609 (1973), also a case involving forged endorsements by a dishonest employee, the court appropriately observed:

" . . . Nothing on the face of the instruments would have led the bank to suspect they were irregular in any way. A single branch of a large bank, as the

testimony indicated, may handle several thousand instruments bearing third party indorsements in a single day. Considering this burden, it would be commercially unreasonable to expect payor banks to undertake foolproof efforts to verify ostensibly valid indorsements." 507 P. 2d at 620.

*Cf. Feldman Construction Company v. Union Bank,* 28 Cal. App. 3d 731, 104 Cal. Rptr. 912 (1972), where a check was drawn payable to:

> "Interstate Steel Corp.
> General Pipe & Supply."

On the back of the check, above where endorsements were to be placed, was written the following:

> "Endorsement of this check acknowledges payment as of this date all material and labor at A.I.C. Bldg. 8060 Florence Ave. Downey, Calif."

The check was deposited by Interstate Steel in its checking account bearing only its endorsement and that of its president; there was no endorsement by General Pipe & Supply Company. In holding that the bank had been negligent in making payment on the improperly endorsed check, the court noted:

> " . . . [T]hat the check was payable jointly to two payees and required the endorsement of both. The two payees were identified on the face of the check as separate entities, one by 'Corp.' and one by 'Co.', the one name placed on top of the other on separate lines. . . .
>
> "In addition, the endorsement on the back of the check made it clear what type of transaction was in progress; it was payment by a general contractor to a subcontractor and the materialman who had supplied the subcontractor. Although direct evidence was not taken below concerning ordinary business practices in the building industry, the notation on the check itself provides evidence of the

drawer's intent to pay two parties jointly (citation omitted); he was discharging a debt owed to the subcontractor while protecting the company against the lien of an unpaid materialman. . . ." 28 Cal. App. 3d at 734-35.

In *Thompson Maple Products v. Citizens National Bank*, *supra*, the wrongdoer was entrusted with a number of checks over a period of some three years, ostensibly for the purpose of delivering them to the rightful payees. He then forged the payee's signature on each check and either cashed or deposited them in his bank account. The court there answered the contention that the checks were not paid in accordance with "reasonable commercial standards" by observing that "the checks were regular on their face and bore the purported endorsement of the named payee." 234 A. 2d at 36.

In the final analysis, as with the other components of § 3-406, what constitutes a breach of "reasonable commercial standards" must be decided in the context of a specific set of facts, Note, *Forgeries and Material Alterations: Allocation of Risks Under the Uniform Commercial Code*, 50 Boston Univ. L. Rev. 536, 547 (1970). Here, the bank employee who handled the transaction with Gabriszeski questioned him concerning the use of two names in his trade name, and received what was a reasonable explanation under the circumstances. Gabriszeski then filled out a signature card with his name, addresses and telephone numbers for home and business; and also furnished his social security number. He told the employee he was an acoustical tile contractor and deposited the check in the new account under the trade name. We might also note in passing that it was not improper for her to accept the check for deposit without requiring his personal endorsement, Art. 95B, § 4-205.

This was not a case in which the check reasonably appeared to be payable to joint payees; nor was First National made aware, either by the manner in which the check was drawn or by notification of the "joint pay agreement," of any intention to make the check jointly payable to the subcontractor and the materialman. There

was nothing on the face of the check to justifiably arouse any suspicion on the part of First National, nor was there any other irregularity in the transaction. Considering that this was a *deposit* of the check by an ostensible payee who freely identified himself — and not a case involving a forgery of the drawer's signature — Dominion failed to establish sufficient facts from which the court below could have found that First National acted contrary to "reasonable commercial standards" of the banking business.

By its negligence, Dominion substantially contributed to the making of the unauthorized signature; and since First National acted in accordance with "reasonable commercial standards," Dominion is precluded by § 3-406 from asserting the forgery. Thus, the circuit court correctly affirmed the ruling of the district court.

*Judgment affirmed; appellant to*
*pay costs.*