**INSURANCE COMPANY OF NORTH AMERICA, a corporation, Plaintiff-Appellant,**

v.

**PURDUE NATIONAL BANK OF LAFAYETTE, Defendant-Appellee.**

**No. 3–1277A312.**

Court of Appeals of Indiana, Third District.

March 17, 1980.

David W. Luhman, Hoffman & Melichar, Lafayette, for plaintiff-appellant.

Robert C. Reiling, Jr., Dickson, Reiling & Teder, Lafayette, Philip J. Scaletta, Jr., West Lafayette, for defendant-appellee.

GARRARD, Presiding Judge.

On October 17, 1969, Arthur L. Freyman, Jr. made an $8,000 withdrawal from the savings account of Helen and Lee Creech at the Lafayette Savings Bank (hereinafter referred to as the drawer bank) by means of a power of attorney bearing the forged signature of Helen Creech. To effect the withdrawal the drawer bank issued its draft drawn on its account at the Lafayette National Bank (hereinafter referred to as the payor bank) payable to Helen Creech. The drawer bank had in its possession a signature card bearing Helen Creech's signature but there is no evidence that the signature on the power of attorney was compared to the signature card. Freyman endorsed his name and forged the signature of Helen Creech on the back of the check and deposited it in his account at the Purdue National Bank of Lafayette (hereinafter referred to as the collecting bank).

In addition, on January 14, 1970, Freyman presented to the same drawer bank a Notice of Administration indicating that an estate had been opened for James Paul Davis, that Ruth H. Braun was the executrix and that Freyman was attorney for the estate. Freyman then withdrew $1,000 from the savings account of Davis. A check for this ammount made payable to Ruth A. Braun was drawn on the payor bank by the drawer bank. Freyman forged Braun's endorsement and endorsed his own name on the bank of the check. It was presented to the collecting bank for deposit in Freyman's account.

The Creech and Braun checks were processed through regular banking channels and when presented to the payor bank, were paid by it. The checking account of the drawer bank was charged with the amount of the checks, a total of $9,000. Subsequently the forged endorsements were discovered and the drawer bank re-credited the Creech and Davis savings accounts in the amount of the respective withdrawals. It demanded reimbursement from the collecting bank which was refused. There is no indication in the record that a demand was made of the payor bank to re-credit the drawer bank's checking account.

The Insurance Co. of North America, pursuant to a policy insuring against loss from

forgery, paid the drawer bank $9,000. The Insurance Company, as subrogee of the rights of the drawer bank, then brought this action against the collecting bank to recover the face amount of the two checks. The case was tried on stipulation of facts and judgment was entered in favor of the collecting bank.

The Insurance Co. of North America, challenging the court's finding that the law is with the collecting bank, raises the following issues on appeal:

1. Whether the Lafayette Savings Bank, as a drawer, may maintain an action against Purdue National Bank, *the collecting bank*, for losses incurred by payment of checks upon the forged endorsements of named payees.

2. Whether the drawer, Lafayette Savings Bank, was negligent and, if so, whether such negligence substantially contributed to the forgeries.

*Issue I:*

Prior to the passage of the Uniform Commercial Code, the authorities appear to have been hopelessly divided on the issue of whether a depository or collecting bank which cashes a check that bears a forged endorsement and then collects the proceeds from the payor bank is liable to the *drawer* for the amount of the check. Recovery was allowed in some jurisdictions under various theories of liability including conversion, money had and received, implied contract, and implied warranty. In a few cases recovery was allowed under the view that a collecting bank honoring a check which bore a forged endorsement did so at its own peril. However, in a nearly equal number of jurisdictions, recovery was disallowed.[1] See Anno., 99 A.L.R.2d 637. While the UCC has done much to simplify the law of negotiable instruments and banking, this issue has remained unclarified.

One of the first cases to consider the question under the Code was *Stone & Webster Engineering Corp. v. First National Bank & Trust Co.* (1962), 345 Mass. 1, 184 N.E.2d 358. In that case, the plaintiff-drawer drew three checks to the payee, Westinghouse Corporation. Prior to delivery of the checks, an employee of the drawer secured possession of the checks, forged the endorsement of Westinghouse, and presented the checks to the defendant-collecting bank for cash. The collecting bank endorsed the checks and obtained payment from the drawer's bank, which in turn debited the drawer's account. After making an unsuccessful demand on its bank to recredit the account, the drawer brought suit directly against the collecting bank seeking recovery on the alternative grounds of money had and received conversion.

As to the first of these theories, the court stated that the drawer had no rights to the proceeds of its own check payable to Westinghouse. It could not have presented the check for payment because it was neither a holder nor an agent for a holder. The collecting bank did not have money in its hands which belonged to the drawer. The money received by the collecting bank was held to belong to the payor bank, not the drawer.

The court also concluded that although a collecting bank could be liable for conversion to a proper party, under UCC § 3–419[2]

1. We have found no prior Indiana cases dealing with this issue.

2. 26–1–3–419 [19–3–419]. Conversion of instrument—Innocent representative.—(1) An instrument is converted when
  (a) a drawee to whom it is delivered for acceptance refuses to return it on demand; or
  (b) any person to whom it is delivered for payment refuses on demand either to pay or to return it; or
  (c) it is paid on a forged indorsement.
(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.
(3) Subject to the provisions of this act [26–1–1–101—26–1–10–106] concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or other-

the collecting bank was not liable to the drawer. The court stated that since there was no explicit provision in the Code which purported to determine to whom the collecting bank may be liable, the issue would be decided on pre-Code law. The court reasoned that since the drawer had no valuable rights in the checks and could not have presented them for payment, it had no right of action in conversion.

Thus, the drawer had no right of direct action against the collecting bank for the loss on checks bearing forged endorsements. However, this result did not relieve the collecting bank of potential ultimate liability.[3] The drawer could proceed against the payor bank for violating its obligation to pay money from the drawer's account only according to the drawer's order. UCC 4–401(1).[4] The payor bank would then have a

> wise to the true owner beyond the amount of any proceeds remaining in his hands.
>
> (4) An intermediary bank or payor bank which is not a depositary bank is not liable in conversion solely by reason of the fact that proceeds of an item indorsed restrictively (sections [26–1–]3–205 and [26–1–]3–206) are not paid or applied consistently with the restrictive endorsement of an endorser other than its immediate transferor. [Acts 1963, ch. 317, § 3–419, p. 539.]"

**3.** This assumes, of course, that none of the parties had a valid defense to the action. In an action between the drawer and payor bank, the payor bank has defenses under IC 26–1–3–406 and IC 26–1–4–406. The collecting bank has defenses against the drawer bank under IC 26–1–4–207(4) and IC 26–1–4–406(5).

> "26–1–3–406 [19–3–406]. Negligence contributing to alteration or unauthorized signature.—Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business. [Acts 1963, ch. 317, § 3–406, p. 539.]
>
> 26–1–4–406 [19–4–406]. Customer's duty to discover and report unauthorized signature or alteration.—(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.
>
> (2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank
>
>   (a) his unauthorized signature or any alteration on the item if the bank also establishes

> that it suffered a loss by reason of such failure; and
>
>   (b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen [14] calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.
>
> (3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).
>
> (4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one [1] year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three [3] years from that time discover and report any unauthorized endorsement is precluded from asserting against the bank such unauthorized signature or endorsement or such alteration.
>
> 26–1–4–207(4)
>
> (4) Unless a claim for breach of warranty under this section is made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making claim. [Acts 1963, ch. 317, § 4–207, p. 539.]
>
> 26–1–4–406(5)
>
> (5) If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense the bank may not assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim. [Acts 1963, ch. 317, § 4–406, p. 539.]"

**4.** "26–1–4–401 [19–4–401]. When bank may charge customer's account.—(1) As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft."

remedy against the collecting bank based upon the latter's warranty of a valid endorsement. UCC 3–417(1)(a) and UCC 4–207(1)(a).[5] The Massachusetts court recognized that allowing direct suit by the drawer against the collecting bank could avoid circuitous actions. However, it rejected the argument because it felt that permitting a direct action could impair defenses which might be applicable.[6]

This reasoning was rejected in *Sun 'N Sand Inc. v. United California Bank* (1978), 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920. In this case the California Supreme Court disapproved an earlier rationale allowing direct action on third party beneficiary principles[7] but found that direct action should be permitted under the Code. The court held that a drawer whose account was debited by his bank is a payor entitled to claim the benefits under the warranties of § 4–207 which extend to the "payor bank or other payors  .  .  .  ." It could therefore maintain an action for breach of warranty against the collecting bank.

The court reasoned as follows:

Section 4207, subdivision (1), provides that its warranties extend to 'the payor bank or other payor who in good faith pays or accepts the item.' To receive the benefit of these warranties, then, the drawer of a check must qualify as an 'other payor who  .  .  .  pays.' At least one court has held, although without offering any explanatory rationale, that a drawer whose account was debited by his

bank is a payor entitled to claim the benefit of these warranties. (*Insurance Company of No. Amer. v. Atlas Supply Co.* (1970), 121 Ga.App. 1, 172 S.E.2d 632, 636.) We find this broad construction of the payor concept justified by inferences that can be drawn from the structure of section 4207 and language in the official comments to the UCC.

The warranties provided for in subdivisions (1)(b) and (1)(c) of section 4207 are expressly made subject to certain exceptions which operate in favor of a holder in due course who acts in good faith. These warranties are not extended to a number of parties, including a drawer 'whether or not the drawer is also the drawee.' (§ 4207, subds. (1)(b)(ii) & (1)(c)(ii).) By negative implication, the warranties are given by a collecting bank to a drawer who is not also the drawee (payor) bank—at least when the collecting bank is not a holder in due course or does not act in good faith. Section 4207 is quite clear in excepting drawers under subdivisions (1)(b)(ii) and (1)(c)(ii); accordingly, we may infer that drawers are among those to whom the warranty of section 4207, subdivision (1)(a) extends, as no comparable exceptions are there made.

The inferences thus compelled by the structure of section 4207 indicate the Code contemplates that the drawer of a check is an 'other payor' for purposes of that section who may, unless specifically

---

**5.** "26–1–3–417 [19–3–417]. Warranties on presentment and transfer.—(1) Any person who obtains payment or acceptance and any prior transferor warrants to a person who in good faith pays or accepts that (a) he has a good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has a good title;

26–1–4–207 [19–4–207]. Warranties of customer and collecting bank on transfer or presentment of items—Time for claims.—
(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that
   (a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title;

**6.** *See* footnote 3, *supra*, especially IC 26–1–4–406(5).

**7.** *Allied Concord Financial Corporation v. Bank of America National Trust & Savings Assoc.* (1969), 275 Cal.App.2d 1, 80 Cal.Rptr. 622. The third party beneficiary concept has been criticized elsewhere. *See* Comment, *Drawer v. Collecting Bank for Payment of Checks on Forged Indorsements—Direct Suit Under the Uniform Commercial Code* (1971), 45 Temp. L.Q. 102. *Cf. State v. Williamson Polishing & Plating Co., Inc.* (1979), Ind.App., 384 N.E.2d 1114 stating the Indiana rule that no right in the third party arises unless he was an *intended* beneficiary of the contract.

excepted, claim the benefits of the warranties therein created. Although the term 'payor' is more commonly used in reference to the drawee than the drawer, it is not defined anywhere in the Code and hence should not be regarded as a term of art used in a narrow, technical sense; when a check is negotiated, it is the drawer who ultimately 'pays' when his account is charged in the amount of the check. This is implicitly recognized in the official comments to the UCC: 'Similarly, under subparagraph (ii) a drawer of a draft is presumed to know his own signature and if he fails to detect a forgery of his signature and pays a draft he may not recover that payment from a holder in due course acting in good faith.' (UCC, § 3417, com. 4.)

We therefore hold that the drawer of a check whose account is charged is a payor within the meaning of section 4207 and may maintain an action against a collecting bank based on that section's warranties.

21 Cal.3d at 682, 683, 148 Cal.Rptr. at 337.

The court further held that the collecting bank could assert the same defenses against the drawer as would be asserted against a payor bank:

Courts in other jurisdictions that have denied to drawers a direct right of action have apparently been concerned that collecting banks would not always be able to assert defenses available to drawee banks. They have assumed that direct suits by drawers would not merely avoid circuity of action, but would alter substantive rights. (*See, e. g., Stone & Webster Eng. Corp. v. First National B. & T. Co.* (1962), 345 Mass. 1, 184 N.E.2d 358, 362–363; *Life Insurance Company of Virginia v. Snyder* (1976), 141 N.J.Super. 539, 358 A.2d 859, 862.) We find nothing to prevent collecting banks (and payees) from asserting the same defenses as drawee banks.

\* \* \* \* \* \*

Section 3406 operates in favor of a holder in due course or 'a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.' Once again we recognize that the term 'payor' is not used in a technical sense; it must be read in light of the provision in which it appears and the structure of the Code as a whole. We have determined that the statutory warranties of sections 3417 and 4207 are given to the drawer of a check; those sections clearly contemplate that a drawer has a direct right of action, and this result is consonant with the Code's important underlying policy of simplifying and modernizing the law governing commercial transactions. Finding nothing in the Code to suggest that all defenses applicable in a suit by the drawer against the drawee bank or not likewise applicable in a direct suit against the collecting bank, we hold that a collecting bank is an 'other payor' for purposes of section 3406.

The preclusions of section 4406 may also be invoked by the collecting bank in a direct suit by a drawer. Subdivision (5) of that section provides: 'If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense the bank may not assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim.' As the court recognized in *Allied Concord etc., Corp. v. Bank of America* (1969) *supra*, 275 Cal.App.2d 1, 6, 80 Cal.Rptr. 622, this subdivision implies that section 4406 defenses, available to a drawee bank against claims of its depositors, are also available to a collecting bank in a direct action by the depositor.

21 Cal.3d at 683, 684, 148 Cal.Rptr. at 338.

We find the California court's analysis impressive. Although the Code does not expressly provide for direct suit between the drawer and collecting bank, it does not follow that the Code should not be reasonably construed to allow such actions. IC 26–1–1–102(1) provides that the Code shall

be liberally construed and applied to promote its express underlying purposes and policies. These purposes and policies include "to simplify, clarify and modernize the law governing commercial transactions." IC 26–1–1–102(2)(a). The construction of the Code advanced by the California court fulfills this purpose by the avoidance of cumbersome and uneconomical circuity of action.

We therefore adopt the reasoning of *Sun 'N Sand v. United California Bank, supra,* and hold that the drawer of a check whose account is charged is a payor within the meaning of IC 26–1–4–407 and may maintain a direct action based on the warranties therein. We further hold that the defenses of IC 26–1–3–406 and IC 26–1–4–406 may be asserted by a collecting bank against the drawer.

*Issue II:*

Having concluded that the drawer bank may maintain a direct action against a collecting bank, we must also determine whether the drawer bank is precluded by virtue of IC 26–1–3–406 from asserting the forgeries against the collecting bank.

IC 26–1–3–406 provides:

26–1–3–406 [19–3–406]. Negligence contributing to alteration or unauthorized signature.—Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or *against a drawee or other payor* who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business. [Acts 1963, ch. 317, § 3–406, p. 539.]

The drawer bank contends that its negligence, if any, did not directly and proximately affect the conduct of the collecting bank in accepting the forgeries, and that therefore its negligence did not substantially contribute to the forgery.

Under pre-Code law, only negligence which *directly* and *proximately* caused the bank to accept the forgery would preclude the drawer from asserting the forgery. *Fargo National Bank v. Massey-Ferguson, Inc.* (8th Cir. 1968), 400 F.2d 223; Uniform Negotiable Instruments Act § 23; *see also* Anno., 39 A.L.R.2d 641. In some jurisdictions the "proximate cause" rule has been followed even under the Code. Thus, negligent business practices or the negligent and unwarranted issuance of checks and delivery to the forger have been held *not* to be negligence substantially contributing to the loss because the negligence did not induce or cause the bank to accept the forged instrument. *Society National Bank of Cleveland v. Capital National Bank* (1972), 30 Ohio App.2d 1, 281 N.E.2d 563; *East Gadsden Bank v. First City National Bank* (1973), 50 Ala.App. 576, 281 So.2d 431; *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (8th Cir. 1974), 491 F.2d 192.

However, we do not believe that the language of § 3–306 is a mere restatement of pre-Code law. As was aptly pointed out in *Thompson Maple Products v. Citizens National Bank* (1967), 211 Pa.Super. 42, 234 A.2d 32:

Had the legislature intended simply to continue the strict estoppel doctrine of the pre-Code cases, it could have employed the term 'precluded,' without qualification, as in § 23 of the old Negotiable Instruments Law, 56 P.S. § 28 (repealed). However, it chose to modify that doctrine in § 3–406, by specifying that negligence which *substantially contributes to . . . the making of an unauthorized signature . . . .*' will preclude the drawer from asserting a forgery. The Code has thus abandoned the language of the older cases (negligence which 'directly and proximately affects the conduct of the bank in passing the forgery') and shortened the chain of causation which the defendant bank must establish. '[N]o attempt is made,' according to the Official Comment to § 3–406, 'to specify what is negligence, and the question is one for the court or jury on the facts of the particular case.'

234 A.2d at 34. *See also Transamerica Insurance Co. v. U. S. National Bank of Oregon* (1976), 276 Or. 945, 558 P.2d 328; *Fidelity and Casualty Co. of N. Y. v. Constitution National Bank* (1975), 167 Conn. 478, 356 A.2d 117; *Fidelity & Deposit Co. of Maryland v. Chemical Bank N. Y. Trust Co.* (1970), 65 Misc.2d 619, 318 N.Y.S.2d 957; *Dominion Construction Inc. v. First National Bank of Maryland* (1974), 271 Md. 154, 315 A.2d 69.

■ In the case at hand, the drawer bank allowed withdrawals from the savings accounts of its customers on the fraudulent assertions of the forger that he had authority to make such withdrawals. To obtain the Creech check, the forger presented a power of attorney bearing the forged signature of Helen Creech. Although the drawer had in its possession a signature card with which to verify the signature on the document, it failed to do so. Thus, without verifying the validity of the authorization, the drawer issued a check payable to Helen Creech and placed it directly in the hands of the person who had already forged her name. As to the Braun check, the forger did not present any written authorization for withdrawal from the Davis' savings account. He merely presented a Notice of Administration which identified him as attorney for the estate of Davis. The bank made no attempt to verify the oral assertion of the forger that he had authorization to make the withdrawal for the executrix. Furthermore, there is no evidence in the record establishing any course of dealing or other basis for reliance by the drawer bank. Thus, a reasonable inference can be drawn that the drawer delivered checks representing its customers' monies into the hands of a stranger on the basis of unverified authorization to make withdrawal from these accounts. Thus, the court could well have found that the drawer failed to use ordinary care in dealing with the assets of its customers and in delivering the checks to the forger. In addition, we must conclude that such negligence facilitated the subsequent unauthorized signatures. If the drawer bank, in the exercise of due care, had verified the forger's authority to make

the withdrawals and to receive the checks representing such withdrawals, the forger would not have been in the position to have forged the payees' endorsements thereon as the checks would not have been issued. Such negligence was a substantial factor contributing to the making of the unauthorized endorsement and precluded the drawer from asserting the unauthorized signature against the collecting bank. Therefore, we hold that the trial court did not err in entering judgment in favor of the collecting bank.

Judgment affirmed.

HOFFMAN and STATON, JJ., concur.